UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:15cv51-FDW

| MICHAEL DENNIS LONG, | ) | |
|---|---|---|
| Petitioner, | ) | |
| vs. | ) | ORDER |
| RICHARD NEELY, | ) | |
| Respondent. | ) | |

**THIS MATTER** is before the Court on initial review of Petitioner Michael Dennis Long's pro se Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) Also before the Court is Petitioner's "Application to Proceed in District Court Without Prepaying Fees and Costs." (Doc. No. 3.)

**I.     BACKGROUND**

On June 28, 2006, Petitioner was convicted by a jury in Lincoln County Superior Court of felony fleeing to elude arrest and of having obtained the status of habitual felon. State v. Long, 650 S.E.2d 675, *1 (N.C. Ct. App. 2007) (unpublished). Judgement was consolidated, and Petitioner was sentenced to 135-171 months imprisonment. (Pet. 1, Doc. No. 1.)[1] He appealed to the North Carolina Court of Appeals, which found no error. Long, 650 S.E.2d at *2.

Petitioner next filed a Motion for Appropriate Relief ("MAR") in the Lincoln County Superior Court on January 20, 2010, which was denied on its merits on February 4, 2010. (Order Den. MAR 37-9, Doc. No. 1-1.) Petitioner sought discretionary review in the North Carolina

---

[1] Unless otherwise noted, the page numbers cited for court documents are those generated by CM/ECF, the district court's electronic filing system.

1

Court of Appeals by way of a Petition for Writ of Certiorari filed September 7, 2010. It was denied on September 23, 2010. (Order Den. PWC 40, Doc. No. 1-1.)

On September 30, 2011, Petitioner filed a second MAR in the Lincoln County Superior Court, which was denied on procedural grounds on November 23, 2011. (Order Den. 2011 MAR 17-18, Doc. No. 1-2.) Petitioner's pleadings do not indicate what, if any, legal steps he took in the interim, but on October 3, 2012, he filed a notice of appeal in the North Carolina Supreme Court, which was dismissed on December 12, 2012. Long v. State, 735 S.E.2d 325 (N.C. 2012). Petitioner's pleadings show that he subsequently filed an action in the North Carolina Court of Appeals and that on June 13, 2013, he filed a petition for writ of certiorari in the North Carolina Supreme Court, which was dismissed on August 27, 2013. (Order Dismissing PWC 15, Doc. No. 1-2.)

On September 24, 2014, Petitioner filed a third MAR in the Lincoln County Superior Court, which was denied on October 16, 2014. (Order Den. 2014 MAR 37-8, Doc. No. 1-2.) Petitioner filed a petition for writ of certiorari in the North Carolina Court of Appeals, which was denied on December 17, 2014. (Order Den. 2014 PWC 48, Doc. No. 1-2.)

Petitioner signed and placed the instant habeas Petition in the prison mailbox on April 20, 2015. (Pet. 19, Doc. No. 1.) He raises ten (10) grounds for relief, which, for the most part, restate the claims raised on direct appeal and in his three MARs.

## II. STANDARD OF REVIEW

The Court is guided by Rule 4 of the Rules Governing Section 2254 Cases, which directs district courts to examine habeas petitions promptly. Rule 4, 28 U.S.C.A. foll. § 2254. When it plainly appears from any such petition and any attached exhibits that the petitioner is not entitled to relief, the reviewing court must dismiss the motion. Id.

## III. DISCUSSION

### A. Application to Proceed Without Prepayment of Fees

Federal law requires that a petitioner seeking habeas review of his state conviction and/or sentence in federal district court pay a filing fee in the amount of $5.00, see 28 U.S.C. § 1914, or be granted leave by the court to proceed without prepayment of fees and costs, see 28 U.S.C. § 1915(a)(1). Petitioner has filed an "Application to Proceed in District Court Without Prepaying Fees and Costs" and paid the $5.00 filing fee. Because he has paid the filing fee, Petitioner's "Application to Proceed in District Court Without Prepaying Fees and Costs" is moot.

### B. Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides a statute of limitations for § 2254 petitions by a person in custody pursuant to a state court judgment. 28 U.S.C. § 2244(d)(1). The petition must be filed within one year of the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Under § 2244(d)(1)(A), Petitioner's convictions became final on or about November 6, 2007. The North Carolina Court of Appeals issued its opinion affirming Petitioner's convictions

and sentence on October 2, 2007. State v. Long, 650 S.E.2d 675 (N.C. Ct. App. 2007). Petitioner then had thirty-five days to file a petition for discretionary review in the North Carolina Supreme Court. See N.C. R. App. P. 15(b) ("A petition for review following determination by the Court of Appeals shall be . . . filed and served within fifteen days after the mandate of the Court of Appeals has been issued to the trial tribunal."); N.C. R. App. P. 32(b) ("Unless a court orders otherwise, its clerk shall enter judgment and issue the mandate of the court twenty days after the written opinion of the court has been filed with the clerk."). Petitioner did not seek discretionary review during that thirty-five-day time frame. Therefore, his conviction became final on November 6, 2007, when the time for seeking review expired. See § 2244(d)(1)(A); Gonzalez v. Thaler, 132 S.Ct. 641, 656 (2012) ("We hold that, for a state prisoner who does not seek review in a State's highest court, the judgment becomes 'final' on the date that the time for seeking such review expires.").

The federal statute of limitations then proceeded to run for 365 days until it fully expired on November 6, 2008. Petitioner's January 20, 2010 MAR and subsequent state court proceedings neither tolled nor restarted the federal statute of limitations. See Minter v. Beck, 230 F.3d 663, 665–66 (4th Cir. 2000). A properly filed MAR will toll the federal statute of limitations, see § 2244(d)(2), if the MAR is filed before the statute of limitations has expired, see Minter, 230 F.3d at 665-66. Here, the statute of limitations expired more than 14 months before Petitioner filed his first MAR.

Petitioner acknowledges that his Petition is untimely under § 2244(d)(1). (Pet. 16, Doc. No. 1.) Nevertheless, he contends that the one-year statute of limitations does not bar this action and that he is entitled to a merits review of his claims pursuant to McQuiggin v. Perkins, 133 S.Ct. 1924 (2013). (Pet., supra, at 16-17.)

4

In McQuiggin v. Perkins, the Supreme Court recognized a "miscarriage of justice" exception to § 2244(d)(1)(D). 133 S.Ct. at 1928. Under that exception, a credible showing of actual innocence may allow a petitioner to pursue his constitutional claims on the merits notwithstanding expiration of the statute of limitations. Id. at 1931. Petitioner asserts that he is innocent of the speeding to elude charge at issue here. (Pet., supra, at 9.). The miscarriage of justice exception, however, applies only to cases "in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" Id. at 1933 (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)) (internal quotation marks omitted). "To be credible, such a claim requires [the] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup, 513 U.S. at 324.

The evidence against Petitioner was presented at trial through the testimony of three Lincoln County Sheriff's Deputies. According to their testimony, the deputies were patrolling in two cars on the night of November 18, 2005 when they passed a white Suburu with its headlights off, parked partially in the road. (Trial Tr. 21-23, Doc. No. 1-3.)[2] One of the deputies ran the Suburu's license plate number through the department's central communications center. (Trial Tr., supra, at 23.) The response from the communications center was that the plate was registered to a Chevy Suburban. (Trial Tr., supra, at 24.) The deputies turned their vehicles around and headed back in the direction of the Suburu. (Trial Tr., supra.) The deputy in the second car testified that as he made his turn, he saw the Suburu driving away at a high rate of speed. (Trial Tr., supra.) As the deputy attempted to catch up to the Suburu, he observed it

---

[2] Because Petitioner filed a copy of his entire trial transcript, citations are to the transcript page numbers rather than to the page numbers generated by the Court's electronic filing system.

attempt to take a curve leading to N.C. Highway 16 at a high rate of speed, running a stop sign in the process. (Trial Tr., supra, at 25.) The Suburu then travelled across both lanes of Highway 16 and into a ditch, knocking over a fire hydrant. (Trial Tr., supra.) The Suburu proceeded south in the ditch, drove through a culvert, and turned southward in the northbound lane of Highway 16, forcing two oncoming cars onto the shoulder of the road. (Trial Tr., supra, at 25-26.) The Suburu made its way into the southbound lane, and at that point, the deputy turned on his blue lights and siren and initiated pursuit of the Suburu. (Trial Tr., supra, 26.)

Subsequently, the deputies in the other patrol car took the lead position and pursued the Suburu for 12.8 miles through parts of Lincoln, Gaston, and Mecklenburg Counties. The Suburu ran a number of traffic lights and stop signs during the chase. In Mecklenburg County, the Suburu pulled into the parking lot of an industrial building; the driver jumped out while the vehicle was still moving and fled on foot. The empty Suburu hit a parked tractor trailer. The deputies gave chase on foot and in their vehicles, finally cornering the driver between two buildings and a fence. The driver was arrested as he tried to climb the fence. He was identified as Michael Dennis Long, the Petitioner. (Trial Tr., supra, 27-33.) Further evidence showed that Petitioner's driver's license was revoked at the time. (Trial Tr., supra, 41.) Petitioner did not present any evidence at trial.

As noted, Petitioner was convicted of felony fleeing to elude arrest. See N.C. Gen. Stat. § 20-141.5(b). Under North Carolina law, it is Class 1 misdemeanor "for any person to operate a motor vehicle on a street, highway, or public vehicular area while fleeing or attempting to elude a law enforcement officer who is in the lawful performance of his duties." § 20-141.5(a). However, if two or more aggravating factors listed in the statute are present at the time of the violation, the violation becomes a Class H felony. See § 20-141.5(b).

Petitioner's superseding indictment listed the following aggravating factors: 1) speeding in excess of 15 miles per hour over the legal speed limit; 2) reckless driving as proscribed by N.C. Gen. Stat. § 20-140; 3) negligent driving leading to an accident causing property damage in excess of one thousand dollars ($1,000); and 4) driving when the person's driver's license is revoked. (Superseding Indictment 7, Doc. No. 1-1.) At the close of the State's evidence, the prosecutor conceded that the State had not proved that Petitioner caused property damage in excess of $1,000, so that aggravating factor was dismissed.

Petitioner claims that he is actually innocent of fleeing to elude arrest because deputies were not performing their lawful duties when they initiated their pursuit. As evidence, Petitioner offers North Carolina Department of Motor Vehicles records purporting to show that the license plate on the Suburu at the time of the incident was registered to the Suburu and, therefore, was not fictitious. (DMV Records 45-6, Doc. No. 1-1.) He also offers a 2008 affidavit of Denise Harwell Seagle, the owner of the Suburu, which states that 8-10 days after this incident, a Lincoln County Sheriff's Deputy returned the license plate that had been on the Suburu to her. (2008 Seagle Affidavit 44, Doc. No. 1-1.)

Accepting Petitioner's evidence as proof that the tags on the Suburu were not fictitious, the Court, nevertheless, concludes that this evidence is insufficient to show that "it is more likely than not that no reasonable juror would have convicted [the petitioner]" had it been introduced at trial. Schlup, 513 U.S. at 329. A law enforcement officer may stop a person for investigative purposes when the officer has reasonable suspicion based on articulable facts "that criminal activity 'may be afoot'. . . ." United States v. Arvizu, 534 U.S. 266, 273 (2002) (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)). Whether there is reasonable suspicion to justify the stop depends on the totality of the circumstances, including the information known to the officer

7

and any reasonable inferences to be drawn at the time of the stop. See Arvizu, 534 U.S. at 273-74; United States v. Foster, 634 F.3d 243, 246 (4th Cir. 2011).

Petitioner does not dispute that the deputies involved in his pursuit and arrest had received information from the department's communications center that the Suburu's tag was registered to another vehicle. Although apparently erroneous, this information could form the basis for a reasonable suspicion to justify an investigatory stop. However, the trial transcript shows that prior to any officer initiating a stop, Petitioner ran a stop sign, crossed two lanes of traffic, knocked over a fire hydrant, and ran two cars off the road while driving in the wrong traffic lane. At that point, deputies had probable cause to stop his vehicle. See Whren v. United States, 517 U.S. 806, 809–10 (1996) (reiterating that a vehicle stop is permissible if the officer has probable cause to believe a traffic violation has occurred).

Petitioner also claims that he is innocent of *felony* fleeing to elude arrest because the Suburu was not capable of reaching the speeds testified to at trial. Deputy Terrence Smith testified that he estimated the Suburu's speed along a four-lane stretch of highway as 85 miles per hour. (Trial Tr. 117-18, Doc. No. 1-5.) Deputy Smith based that estimation upon the speed indicated on his own speedometer at the time and the fact that he was neither gaining nor losing ground to the Suburu. (Trial Tr., supra.) He testified that the posted speed limit on that stretch of road was 55 miles per hour. (Trial Tr., supra, at 117.)

Petitioner offers a 2010 affidavit of Denise Seagle, stating that she had purchased the Suburu on the day of the incident and had driven it home on I-85 from Charlotte to Lincolnton. (2010 Seagle Aff. 41, Doc. No. 1-1.) She stated further that the car shook violently when she tried to get it up to the speed limit, which was 60 miles per hour. (2010 Seagle Aff., supra.)

8

Even if Seagle's experience during the only time that she drove the Suburu on the interstate was definitive proof that the car could not top 60 miles per hour, this evidence is insufficient to show that "it is more likely than not that no reasonable juror would have convicted [the petitioner]" of felony fleeing to elude arrest had it been introduced at trial. See Schlup, 513 U.S. at 329. The State was required to prove the existence of only two (2) aggravating factors to elevate the fleeing to elude offense from a misdemeanor to a felony. See § 20-141.5(a)-(b). Petitioner does not dispute that his driver's license was in a state of revocation at the time of the incident, which is an aggravating factor under the statute. See § 20-141.5(b)(5). He also does not dispute that the State proved the elements of reckless driving, another aggravating factor, see § 20-141.5(b)(3), alleged in the superseding indictment. (Superseding Indictment 7 (citing N.C. Gen. Stat. § 20-140), Doc. No. 1-1.)

Petitioner has failed to make a credible showing of actual innocence necessary to overcome the statute of limitations bar. See Perkins, 133 S.Ct. 1931. Therefore, the instant Petition is time-barred and must be dismissed unless Petitioner can demonstrate that he is entitled to equitable tolling. See, e.g., Hill v. Braxton, 277 F.3d 701, 707 (4th Cir. 2002) (The Court may sua sponte dismiss a § 2254 petition without notice if "it is indisputably clear from the materials presented to the district court that the petition is untimely and cannot be salvaged by equitable tolling principles or any of the circumstances enumerated in § 2244(d)(1)."). Equitable tolling requires a showing "(1) that [the petitioner] has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" of filing a timely habeas petition. Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); see also Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000) (holding that equitable tolling of AEDPA's one year limitation period is "reserved for those rare instances where—due to circumstances external to the party's own conduct—it would

be unconscionable to enforce the limitation period against the party and gross injustice would result").

The record shows neither reasonable diligence nor an extraordinary circumstance external to his own control that prevented Petitioner from filing a timely § 2254 petition. By Petitioner's own admission, he identified Denise Seagle as a witness and provided her contact information to his attorney six months prior to trial. (Pet. 17, Doc. No. 1.) She was not a passenger in the Suburu on the night of the incident (Trial Tr. 103-4, Doc. No. 1-5), so her purpose as a witness would have been to testify about the car. As such, all of the evidence offered to support Petitioner's assertion of actual innocence was available to him at the time of his trial and could have been presented in a timely MAR and § 2254 petition. Therefore, he is not entitled to equitable tolling, and his Petition will be dismissed as untimely.[3]

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that:

1) Petitioner's Petition for Writ of Habeas Corpus, Doc. No 1, is **DISMISSED** as untimely;

2) Petitioner's "Application to Proceed in District Court without Prepaying Fees and Costs," Doc. No. 3, is **DISMISSED** as moot; and

3) Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell,

---

[3] The Court is aware of the Fourth Circuit's directive in Hill v. Braxton, 277 F.3d 701, 706 (4th Cir. 2002), that a court must warn a petitioner that his case is subject to dismissal before dismissing a petition as untimely filed when justice requires it. Here, however, such warning is not necessary because Petitioner addressed the statute of limitations issue in his § 2254 petition. (Pet. 16-17, Doc No. 1.)

537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

**SO ORDERED.**

Signed: May 12, 2015

Frank D. Whitney
Chief United States District Judge